**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

NSCO *d/b/a* NEED SUPPLY CO.,

     **Plaintiff,**

v.                         **Civil Action No. 3:16cv848**

COLBY_EXON, LLC, *et al.*

     **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on three motions: (1) Defendants Colby_Exon, LLC ("CEL") and Ryan Scanlon's (collectively, the "Defendants") Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] (the "Joint Motion to Dismiss"), (ECF No. 13); (2) Ryan Scanlon's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2)[2] (the "Scanlon Motion to Dismiss"), (ECF No. 11); and, (3) Plaintiff NSCO, LLC, *d/b/a* Need Supply Co.'s ("Need") Motion to Stay the Scanlon Motion to Dismiss and to Conduct Jurisdictional Discovery (the "Motion for Jurisdictional Discovery"), (ECF No. 17).

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The

---

[1] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[2] Rule 12(b)(2) allows dismissal for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).

Court exercises jurisdiction pursuant to 28 U.S.C. § 1331[3] and 28 U.S.C. § 1367.[4]  For the

reasons that follow, the Court will grant in part and deny in part the Joint Motion to Dismiss,

grant the Motion for Jurisdictional Discovery, and deny without prejudice the Scanlon Motion to

Dismiss.

## I. Factual and Procedural Background

### A.    Summary of Allegations in the Amended Complaint[5]

Need promotes and sells women's and men's clothing via a retail store in Richmond,

Virginia, and an e-commerce website.  Need has registered various trademarks, (the "Need

Marks") and alleges that it and the Need Marks "have become well-known through extensive

advertising to consumers and designers, commercial success, and unsolicited media coverage."

(Compl. ¶ 2, ECF No. 1.)  Need contends that Defendants, through "NEEDessentials," which

sells products including clothing via e-commerce websites, are engaging in "continued

unauthorized use of [the Need Marks] to promote and sell highly similar products and identical

services."  (*Id.* ¶ 32.)

---

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Need's Complaint alleges violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*

[4] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). 28 U.S.C. § 1367(a).  Need's Complaint also alleges violations of Virginia trademark law, and common law trademark and unfair competition claims, and

[5] For purposes of all motions, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Need. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

### 1.  Plaintiff's Product and Trademarks

In 1999, Need opened a retail clothing store, Need Supply Co., in Richmond, where it sells "well-designed and well-constructed clothing and accessories." (*Id.* ¶ 8.)  In 2008, Need started selling clothing and accessories via an e-commerce website, www.needsupply.com ("Needsupply.com"), "to project its brand to an expanding audience." (*Id.* ¶ 9.)  Need asserts that its brand conveys "style, design, and innovation for those consumers seeking an alternative to products from 'mainstream' clothing and accessories retailers." (*Id.* ¶ 11.)  It avers that the Need brand has "garnered substantial unsolicited publicity and [is] widely-recognized and well-regarded for [its] success." (*Id.*)

The Need Marks consist of seven trademarks for which Need has either applied or registered.  Need attaches copies of the applications or registrations to the Complaint.  Three identify "NEED," and four identify "NEED SUPPLY CO.," as the protected mark.  Both "NEED" and "NEED SUPPLY CO." have trademarks either registered or applied for each of the following categories:  (1) men's and women's clothing; (2) men's and women's shoes; (3) computerized on-line ordering featuring men's and women's clothing; and, (4) retail clothing store services.  The earliest trademark, registered in 2000, is for "NEED SUPPLY CO." as a retail clothing store.  Need applied for or registered the remaining trademarks between October 2014 and January 2016.

Need alleges that it has a "strong online presence" and uses a variety of mediums to promote its products, including "a vast social media presence, in-store events, and a lifestyle journal." (*Id.* ¶ 15.)  According to Need, the Marks have been connected with "unique and sought-after clothing and accessories" through "numerous, independent[,] and unsolicited references in print and electronic media." (*Id.* ¶ 16.)  Need declares that many consumers refer

to the Marks simply as "Need," and it provides two examples of such references. Need states

that it has invested "substantial time, effort, and resources" in developing its brand, and has

consistently used the Marks in marketing and promoting its products since 1999. (*Id.* ¶ 18.)

Given these consistent efforts, "the Marks have become some of the most recognizable brands in

the clothing and accessories industry[,] and the public has come to associate 'Need' as

symbolizing the goodwill inherent in the Marks." (*Id.* ¶ 19.) The Marks, accordingly, "possess

enormous value to Need." (*Id.* ¶ 18.)

### 2. Defendants, Their Products, and Their Trademark Applications

Need states that Scanlon, who lives in Australia, began a business "promot[ing] and

market[ing itself] as 'NEEDessentials.'" (*Id.* ¶ 20.) NEEDessentials operates two websites,

www.needessentials.com and www.needessentialsusa.com. Need contends that Scanlon began

NEEDessentials in Australia, and that CEL is Scanlon's "licensee in the United States."

(*Id.* ¶ 21.) Need alleges upon information and belief that CEL is a Delaware limited liability

company with a principal place of business in California. Need asserts that CEL conducts

business in this district "including through the provision of an interactive e-commerce website

engaged in the transaction of business in Virginia." (*Id.* ¶ 4.)

According to Need, NEEDessentials uses its websites to "promote clothing and

accessories, including to consumers in the [United States]." (*Id.* ¶ 23.) Need maintains that by

emphasizing the word "need" in its name, NEEDessentials "contribut[es] to the risk of consumer

confusion." (*Id.* ¶ 22.) Need points to three main areas of overlap between the Need Marks and

NEEDessentials: (1) NEEDessentials "shares the dominant and distinctive element 'NEED'

with the [Need] Marks"; (2) both Need and NEEDessentials market similar products, "namely

clothing and accessories"; and, (3) both parties "share the same channels of trade—website promotion." (*Id.* ¶ 24.)

On January 28, 2016, CEL filed an application with the United States Patent and Trademark Office ("USPTO") seeking to register "NEED ESSENTIALS" for "Belts for clothing; Coats; Dresses; Footwear; Gloves; Headwear; Jackets; Pants; Shirts; Shorts; Skirts; Socks; Sweaters; Swimwear; Undergarments; Wetsuits; [and] Ties." (Ex. B, ECF No. 1-2.) On February 4, 2016, CEL filed an application with the USPTO seeking to register "NEED ESSENTIALS" for "Retail apparel and sporting goods stores; On-line retail store services featuring apparel and sporting goods; [and,] Wholesale and retail store services featuring apparel and sporting goods." (*Id.*)

Sometime around July 20, 2016, Scanlon applied for a design trademark in Australia. The design features a dark square with the word "NEED" in large light capital letters inside the box, and the word "ESSENTIALS" in smaller, dark capital lettering under the square. On March 16, 2016, Scanlon filed an application in the USPTO for the same design trademark.

Need states that it attempted to resolve its disputes with CEL and Scanlon pre-filing, but the parties were unable to agree on a course of action. Need further alleges that, despite knowing that Need owns the Need Marks, Defendants continue to engage in "unauthorized use of the [Need Marks] to promote and sell highly similar products and identical services." (*Id.* ¶ 32.) Need contends that this action "demonstrates an intentional, willful, and bad faith intent to trade on the goodwill of the Marks and to cause confusion, deception, and mistake in the minds of the public." (*Id.*)

### B.   **Procedural Background**

Need filed a six-count Complaint alleging various trademark violations against Defendants. Defendants filed the Joint Motion to Dismiss, and CEL also filed an Answer and

Counterclaims.[6] Scanlon individually filed the Scanlon Motion to Dismiss. Need responded to

the Joint Motion to Dismiss, and Defendants replied. Need responded to the Scanlon Motion to

Dismiss by filing the Motion for Jurisdictional Discovery. Defendants jointly opposed the

Motion for Jurisdictional Discovery, and Need replied.

Need asserts six claims against both defendants:

**Count I:** **Infringement of a Registered Trademark (the "Trademark Infringement Claim")** – Defendants are using "an infringing imitation" of Need's trademark in interstate commerce without Need's authorization. (*Id.* ¶ 34.)

**Count II:** **Federal Unfair Competition, False Designation of Origin (the "Unfair Competition Claim")** – Defendants have intentionally "create[d] confusion in the minds of consumers between themselves and" Need, and consumers "are falsely led to believe that Defendants' websites are associated with" Need's. (*Id.* ¶ 39.)

**Count III:** **Common Law Trademark Infringement (the "Common Law Infringement Claim")** – Defendants are using an infringing mark in advertising, marketing, and promoting their websites and products, and the use of that mark is likely to confuse consumers.

**Count IV:** **Common Law Unfair Competition (the "Common Law Unfair Competition Claim")** – Defendants' infringing mark is "bound to cause confusion, mistake, and deception" in the public about whether their products are associated with Need. (*Id.* ¶ 48.)

**Count V:** **Violation of Virginia Code Section 59.1-92.12 (the "Virginia Infringement Claim")** – Defendants are using an infringing imitation of Need's federally registered trademark in promoting and selling clothing and accessories in Virginia.

**Count VI:** **Violation of the AntiCyberSquatting Consumer Protection Act (the "ACPA Claim")** – Defendants are using infringing marks with the bad faith intent to cause harm to Need and its brand, and to profit unlawfully by using Need's trademark to increase their own sales and revenue.

---

[6] Need timely filed an Answer to CEL's counterclaims. (ECF No. 20.)

Need seeks a permanent injunction against Defendants' use of the Need Marks, an order

that Defendants withdraw their applications with the USPTO, compensatory damages, costs, and

attorneys' fees.  Defendants move to dismiss only Counts II, III, IV, and VI.[7]

## II.  Analysis:  The Motion for Jurisdictional Discovery

Need seek jurisdictional discovery regarding Scanlon's licensing agreement with CEL

and the degree of control that licensing agreement permits Scanlon to exercise over CEL.  Need

contends that information on the needessentialsusa.com website "demonstrates that [Scanlon] is

clearly involved in the promotion and sales of products under the [Scanlon] Mark, including in

the United States," and Need seeks discovery to determine the extent of Scanlon's contacts with

Virginia.  (Mot. Jurisdictional Disc. 3, ECF No. 18.)  Defendants oppose Need's motion, arguing

that Need's request amounts to an improper fishing expedition.  (Def.'s Resp. Mot. Jurisdictional

Disc. 8–10, ECF No. 21.)

Because Need presents more than "speculative or conclusory assertions" about Scanlon's

contact with Virginia, the Court will grant the Motion for Jurisdictional Discovery and allow

limited discovery as to Scanlon's contacts with Virginia.

### A.    Legal Standard:  Jurisdictional Discovery

Discovery under the Federal Rules of Civil Procedure is generous in scope and freely

permitted, and district courts "have broad discretion in [their] resolution of discovery problems

that arise in cases pending before [them]."  *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64

(4th Cir. 1993) (alterations in original) (quoting *In re Multi–Piece Rim Prods. Liab. Litig.*, 653

F.2d 671, 679 (D.C. Cir. 1981)).  A district court does not abuse its discretion by denying

---

[7] The Court will refer to Counts II, III, and IV, collectively, as the "Common Law Trademark Claims."  The Court will refer to Count II and IV, collectively, as the "Unfair Competition Claims."

7

jurisdictional discovery "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003); *see also Base Metal Trading, Ltd v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002) (finding the district court did not abuse its discretion in denying jurisdictional discovery where "the plaintiff simply want[ed] to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction"); *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 554 (E.D. Va. 2004) ("The court does not abuse its discretion to deny jurisdictional discovery when the plaintiff raises only 'bare allegations' to dispute defendant's affidavits denying jurisdictional acts or contacts.").

Jurisdictional discovery can be appropriate when a plaintiff files a motion containing "specific and substantive" allegations regarding a defendant's contacts with the forum state, *see, e.g., Mamo v. BP P.L.C.*, No. 1:05cv1323, 2006 WL 572327, at *2 (E.D. Va. Mar. 7, 2006), or when "'significant gaps in the record' exist[] regarding 'defendant's traditional . . . and also defendant's Internet-based contacts,'" *Weinstein v. Todd Marine Enters.*, 115 F. Supp. 2d 668. 676 (E.D. Va. 2000) (quoting *Coastal Video Commc'ns Corp. v. The Staywell Corp.*, 59 F. Supp. 2d 562, 571 (E.D. Va. 1999)).

## B.    Analysis:  Jurisdictional Discovery is Appropriate Here

In this situation, limited jurisdictional discovery is appropriate.  Need seeks to explore Scanlon's "licensing relationship" with CEL, and Scanlon's relationship with Charles Exon, a member and manager of CEL.  Need asserts that such limited discovery could show that Scanlon, by directing or overseeing some or all of CEL's marketing or sales, did in fact conduct business in Virginia.  Defendants counter that the Declaration of Charles Exon, attached to the Scanlon Motion to Dismiss, establishes that Scanlon "has no ownership" and "does not exercise

8

control" over Need Essentials USA LLC. (Resp. Mot. Jurisdictional Disc. 3, ECF No. 21.) Defendants emphasize that Need "has not pled and the facts presented do no[t] show that the Court has personal jurisdiction over [Scanlon]." (*Id.* at 4.)

The Exon Declaration states that Scanlon is "neither a member nor a manager of either [CEL] or Need Essentials USA LLC," and that Need Essentials USA LLC "owns, operates[,] and maintains" the needessentialsusa.com website. (Exon Decl. ¶¶ 4–5, ECF No. 12-1.) Exon attests that "[b]eginning sometime in December 2016 and continuously since that time, any web-based inquiries which originate in the United States" are automatically redirected to the needessentialsusa.com website, and that "U.S. based consumers do not access or view the www.needessentials.com site." (*Id.* ¶ 7.) The Exon Declaration emphasizes that all U.S.-based inquiries regarding Needessential products are handled by Need Essentials USA LLC, and that the needessentials.com website "has never functioned to allow U.S.-based consumers to make purchases directly from it." (*Id.* ¶¶ 5, 6.)

Need, in contrast, plausibly alleges that Scanlon is "involved in the promotion and sales of products" under the Needessentials Mark, including in the United States. (Mot. Jurisdictional Disc 3.) Further, Need asserts that Scanlon—not CEL or Need Essentials USA LLC—has applied for a trademark with the USPTO related to Needessentials. And although the Exon Declaration states that Scanlon is not a member or manager of either CEL or Need Essentials USA LLC, Exon does not attest that Scanlon exercises no control at all over the marketing or promotion activities of those companies. Because this Court may exercise personal jurisdiction over someone who, *inter alia,* "acts directly *or by an agent,* as to a cause of action arising from the person's . . . [t]ransacting any business in" Virginia, whether CEL or Need Essentials USA LLC acts as Scanlon's agent is relevant to whether this Court has personal jurisdiction over

Scanlon. Va. Code. § 8.01-328.1(A)(1) (emphasis added); *accord Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) ("[I]f a court finds that the defendant has availed himself of the privilege of conducting business in the forum, specific jurisdiction exists.").

Although Need's minimal allegations regarding Scanlon's contacts with Virginia might not currently suffice to justify the Court exercising jurisdiction over Scanlon, this is not a situation in which the Court is faced with a "claim of personal jurisdiction [that] appears to be both attenuated and based on bare allegations in the face of specific denials made by defendant[]." *Carefirst of Md.*, 334 F.3d at 403 (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988)). Need presents more than "speculative or conclusory assertions" about Scanlon's contact with Virginia. *Id.* Accordingly, the Court will grant the Motion for Jurisdictional Discovery and allow limited discovery as to Scanlon's contacts with Virginia.[8]

### III.  Analysis:  The Joint Motion to Dismiss

### A.    Motion to Dismiss for Failure to State a Claim Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Matkari*, 7 F.3d at 1134; *see also Martin*, 980 F.2d at 952.

---

[8] Because the Court will grant the Motion for Jurisdictional Discovery, the Court will deny without prejudice the Scanlon Motion to Dismiss.  (ECF No. 11.)

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citing *Alt. Energy, Inc.*

*v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*,

190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282

(E.D. Va. 1995)).

**B.      Analysis:  Counts II, III, and IV, the Trademark Infringement Claims**[9]

Defendants argue that Need cannot state a claim for any common law trademark

violations because it has failed to plead facts demonstrating that it has a common law trademark,

and it has not "demonstrate[d] use of any mark in any geographical territory of the United

States." (Mem. Supp. Joint Mot. Dismiss 5, ECF No. 14.) Need counters that Defendants

misapprehend its pleading burden for a claim of common law infringement, and that Defendants

mischaracterize the facts Need alleges in its Complaint.

Need has sufficiently pled facts supporting the Trademark Infringement Claims. The

Court will deny the Joint Motion to Dismiss to the extent it seeks to dismiss Counts II, III,

and IV.

---

[9] In briefing, both Need and Defendants fail to identify the differences among the three trademark claims that Defendants seek to dismiss. Both parties brief the issues as though "common law trademark" is the only standard relevant to the Court's determination on Counts II, III, and IV. That is not the case.

Count III, the Common Law Infringement Claim, and Count IV, the Common Law Unfair Competition Claim, both rely on the existence of common law trademarks. In contrast, Count II, the Unfair Competition Claim, is based in federal statutory law. Moreover, Count II, the Unfair Competition Claim, and Count IV, the Common Law Unfair Competition Claim, are both unfair competition claims, and the United States Court of Appeals has held that the test for both of these claims "is essentially the same . . . because both address the likelihood of confusion as to the source of the goods or services involved." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995). That test does not apply to Count III, the Common Law Infringement Claim, which is simply common law trademark infringement, and has a different legal test altogether.

The Court separates the claims out based on the relevant legal standards, not on the parties' briefing.

## 1.   Analysis:  Counts II and IV, the Unfair Competition Claims

### a.   Legal Standard:  Unfair Competition

The standard for stating a claim for unfair competition under the Lanham Act and

common law unfair competition are the same.  *See Lone Star Steakhouse*, 43 F.3d at 930 n.10.

Thus, in order to survive a motion to dismiss as to these two counts, Need must allege facts

supporting the following five elements:

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the
> defendant's use of the mark occurred "in commerce"; (4) that the defendant used
> the mark "in connection with the sale, offering for sale, distribution, or
> advertising" of goods or services; and, (5) that the defendant used the mark in a
> manner likely to confuse consumers.

*People for Ethical Treatment of Animals v. Doughney, (PETA)*, 263 F.3d 359, 364 (4th Cir.

2001) (quoting 15 U.S.C. §§ 1114, 1125(a); *Lone Star*, 43 F.3d at 930).

### b.   Need States Claims for Federal and Common Law Unfair Competition

#### i.   Need Alleges that it Possesses a Mark

Although Defendants contend that Need "does not identify the mark or marks upon

which its common-law-trademark-based counts rely," (Mem. Supp. Joint Mot. Dismiss 2), no

dispute can exist regarding whether Need possesses trademarks.  Need identifies seven

"trademark registrations and pending applications," three in the name of "NEED" and four in the

name of "NEED SUPPLY CO.," and attaches these trademarks to the Complaint.  (Compl. ¶ 12,

Ex. A.)  Need pleads dates of application or registration for these marks as early as February 22,

2000, and as recent as January 5, 2016.  (*Id.*)  Existence of a registered mark "constitutes 'prima

facie evidence of the validity of the registered mark . . . , of the registrant's ownership of the

mark, and of the registrant's exclusive right to use the registered mark.'"  *Emergency One, Inc. v.*

*American Fire Eagle Engine Co.*, 332 F.3d 264, 268 (4th Cir. 2003) (quoting 15 U.S.C.

§ 1057(b)). Accordingly, Need sufficiently alleges that it possesses a mark.

### ii. Need Alleges that Defendants Used the Mark in Commerce and in Connection with Advertising of Goods or Services

Similarly, little disagreement can exist that Need alleges facts sufficient to state the

second, third, and fourth elements of a claim for unfair competition. Need asserts that

Defendants use the trademark "'NEEDessentials' to promote [their] clothing, accessories, and

website." (Compl. ¶ 2.) They contend that Defendants use the websites needessentials.com and

needessentialsusa.com "to promote and sell highly similar products and identical services,"

"namely, clothing and accessories." (*Id.* ¶¶ 32, 24.) While Defendants challenge whether Need

sufficiently supports its claims regarding the effect of its advertising, given the plausible

allegations at bar, that inadequacy cannot justify dismissal at this stage of litigation.

Accordingly, Need sufficiently alleges that Defendants used the "Need" mark in commerce and

"in connection with the sale, offering for sale, distribution, or advertising" of goods or services.

*PETA*, 263 F.3d at 365.

### iii. Need Alleges that Defendants Used the Mark in a Manner Likely to Confuse Consumers

The United States Court of Appeals for the Fourth Circuit has identified seven factors

that help determine whether an allegedly infringing mark creates a likelihood of confusion,

although all factors are not always relevant or equally emphasized. *Lamparello v. Falwell*, 420

F.3d 309, 314 (4th Cir. 2005). These factors are:

> (a) the strength or distinctiveness of the mark; (b) the similarity of the two marks;
> (c) the similarity of the goods/services the marks identify; (d) the similarity of the
> facilities the two parties use in their businesses; (e) the similarity of the
> advertising used by the two parties; (f) the defendant's intent; [and,] (g) actual
> confusion.

*Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). In determining whether a likelihood of confusion exists, "a court should not consider 'how closely a fragment of a given use duplicates the trademark,' but must instead consider 'whether the use in its entirety creates a likelihood of confusion.'" *PETA*, 263 F.3d at 366 (quoting *Anheuser-Busch, Inc. v. L&L Wings, Inc.*, 962 F.2d 316, 319 (4th Cir. 1992)). Moreover, "determining the likelihood of confusion is an 'inherently factual' issue that depends on the facts and circumstances in each case." *Lone Star*, 43 F.3d at 933 (quoting *Anheuser–Busch*, 962 F.2d at 318).

Mindful of this inherently factual nature of the likelihood of consumer confusion, the Court readily concludes that Need alleges sufficient facts to support a reasonable inference that Defendants' use of the Mark creates a likelihood of confusion. Need states that its "portfolio of marks have now become the 'NEED' brand," and "[m]any consumers refer to the Marks simply as 'Need.'" (Compl. ¶¶ 11, 17.) Need identifies Defendants' Mark as "NEEDessentials," which "places emphasis on the word 'NEED'"—the very word with which Need asserts its brand has become associated. (*Id.* ¶ 22.) Need further contends that Defendants promote clothing and accessories—the same products that Need sells. At this stage, these factual allegations sufficiently raise a plausible inference that Defendants' used the Need Mark in a manner likely to confuse consumers.

Accordingly, Need sufficiently alleges facts supporting each element of an unfair competition claim—under both common law and federal law. Accordingly, Counts II and IV, the Unfair Competition Claims, survive the Joint Motion to Dismiss.

### 2. Analysis: Count III, the Common Law Trademark Infringement Claim

#### a. Legal Standard: Common Law Trademark Infringement

Parties generally utilize common law trademark infringement claims when they lack a federally registered trademark. Existence of a registered mark "constitutes 'prima facie evidence of the validity of the registered mark . . . , of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark.'" *Emergency One*, 332 F.3d at 268 (quoting 15 U.S.C. § 1057(b)). Under common law, in contrast, "trademark ownership is acquired by actual use of the mark in a given marketplace." *Id.* at 267 (citing *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97–98 (1918)). Moreover, to acquire common law trademark rights, "it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.'" *Id.* (quoting *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996)). Finally, although the owner of a registered trademark enjoys a nationwide "presumption of priority," *id.* at 268 (quoting 15 U.S.C. § 1057(b)), "[t]he territorial extent of ownership rights in an unregistered mark is not unlimited," and applies only in "'whatever markets the use of a trademark has extended, or its meaning has become known,'" *id.* (quoting *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 415–16 (1916)).

Federal law provides protection to common law trademarks. 15 U.S.C. § 1125(a); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "Once a particular mark or name is deemed eligible for protection, the inquiry for determining if it has been infringed is whether a junior user's employment of an identical or similar mark or name creates a 'likelihood of confusion' in the marketplace." *Perini*, 915 F.2d at 124 (citing *Spartan Food Sys., Inc. v. HFS Corp.*, 813 F.2d 1279, 1284 (4th Cir. 1987)).

### b.     Need States a Claim for Common Law Trademark Infringement

For the reasons stated below, Need pleads sufficient facts to state that it has acquired common law trademark rights in the "NEED" Mark, and that Defendants used "NEED" after Need acquired the common law trademark rights. Need also states facts sufficient to support a reasonable inference that Defendants used "NEED" in the market in which Need had acquired common law trademark rights. And, as discussed above, Need alleges sufficient facts to support a reasonable inference that Defendants' use of the Need Mark created a likelihood of confusion among consumers.

Need asserts that it has been "promoting and selling men's and women's clothing and accessories via its retail store as well as its e-commerce website under the mark NEED SUPPLY CO." for more than fifteen years. It contends that it opened a retail clothing store in Richmond, Virginia, in 1999, and began to sell clothing and accessories via an e-commerce website in 2008. It avers that its "portfolio of marks have now become the 'NEED' brand," and "[m]any consumers refer to the Marks simply as 'Need.'" (Compl. ¶¶ 11, 17.) Need further states that it has "used the Marks and . . . the 'Need Brand' consistently in marketing and promoting its products and services since at least 1999." (*Id.* ¶ 18.) These facts sufficiently allege that, since at least 1999, Need has "use[d] the mark in the sale of goods or services.'" *Emergency One*, 332 F.3d at 267 (quoting *Sengoku Works*, 96 F.3d at1219).

And, although Need identifies no specific date on which Defendants developed and began marketing NEEDessentials, it asserts that CEL applied for two trademarks in the United States on June 21, 2016, and attaches copies of those trademark applications. At this stage of the proceedings, that allegation sufficiently supports a plausible inference that Defendants began using the mark after Need.

Finally, as to the geographic scope of Need's common law trademark, Need alleges that it "operates a brick-and-mortar store" in Richmond, Virginia. (Compl. ¶ 3.) It contends that it is "widely-recognized and well-regarded for [its] success." (*Id.* ¶ 11.) Need asserts that it promotes itself through "a vast social media presence, in-store journals, and a lifestyle journal." (*Id.* ¶ 15.) It also offers example of some geographic recognition.[10] It quotes one consumer who identifies as "a CA shopper," and refers to Need as "NEED." (*Id.* ¶ 17.) These allegations, taken together, support a reasonable inference at this stage that Need's "'trademark has extended, or its meaning has become known'" certainly across the United States. *Emergency One*, 332 F.3d at 268 (quoting *Metcalf*, 240 U.S. at 415–16.)

Accordingly, Need sufficiently pleads facts that: (1) it acquired common law trademark rights in the "NEED" Mark; (2) Defendants thereafter used "NEED"; and, (3) Defendants used "NEED" in the market in which Need had acquired common law trademark rights. Furthermore, for the same reasons as discussed in Part II.B.1.b.iii, Need alleges sufficient facts to support a reasonable inference that Defendants' use of the Need Marks created a likelihood of confusion among consumers. Need therefore pleads facts sufficient to state a claim for Common Law Trademark Infringement. Count IV, the Common Law Infringement Claim, survives the Joint Motion to Dismiss.

---

[10] Need attaches to its Response to the Joint Motion to Dismiss a trade publication reporting that "Need Supply Co. sells its trendy clothing worldwide," and saying that "Need Supply Co.'s online presence . . . boost[ed] the clothing retailer's growth worldwide." (Resp. Joint Mot. Dismiss Ex. C, ECF No. 19-3.) Of course, to the extent this allegation expands upon or adds to the facts in the Complaint, the Court will not consider it. *See, e.g.*, *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 917 (E.D. Va. 2004) ("[I]t is . . . 'axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989))).

## C.     Analysis: Count VI, the ACPA Claim

Defendants argue that Need fails to state a claim for an ACPA violation because its allegations "do not plausibly demonstrate bad faith on the part of the Defendants." (Joint Mot. Dismiss 7, ECF No. 14.) Need counters that it has sufficiently pled Defendants' bad faith because the Needessential name "share the distinctive 'Need' element, . . . and serve no other purpose than to divert customers away from [Need's] website." (Pl.'s Resp. Joint Mot. Dismiss 11, ECF No. 19.)

Because, at this stage, Need pleads only conclusory allegations of Defendants' bad faith, but insufficient facts to support a reasonable inference that Defendants acted in bad faith, Need fails to state a claim for an ACPA violation. The Court will dismiss Count VI, the ACPA Claim.

### 1.     Legal Standard: Violation of the ACPA

To plead a violation of the ACPA, Need must allege facts supporting an inference that: (1) Defendants had a bad faith intent to profit from using the infringing mark; and, (2) the infringing mark is "identical or confusingly similar to, or dilutive of," Need's mark. *PETA*, 263 F.3d at 367. The ACPA includes a list of nine non-exhaustive factors[11] that a court may consider

---

[11] These nine factors are:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or

in determining whether a defendant acted in bad faith. The factors are "permissive," and a court need not "march through them all in every case. [They] are given to courts as a guide, not as a substitute for careful thinking about whether the conduct at issue is motivated by a bad faith intent to profit." *Falwell*, 420 F.3d at 319–20 (internal citation and quotation marks omitted).

The bad faith determination is especially important in the context of an ACPA violation because of the statute's purpose. Through the ACPA, Congress sought to prevent, *inter alia*: (1) the registration of "multiple marks with the hope of selling them to the highest bidder," *Falwell*, 359 F.3d at 318; (2) the registration of "distinctive marks . . . with the intent to profit from the goodwill associated with such marks"; (3) the "consumer confusion [caused] by misusing the domain name to diver customers from the mark owner's site to the cybersquatter's own site," S. Rep. No. 106-140, 1999 WL 594571, at *5–6. Accordingly, the ACPA was

---

disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and[,]

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(b)(i).

designed not merely to prevent consumer confusion resulting from the use of similar marks for different purposes, but to prevent individuals from attempting to exploit and profit from the use of distinctive marks.

## 2.    Need Fails to State a Claim for a Violation of the ACPA

As discussed above, Need sufficiently pleads that NEEDessential is confusingly similar to the Need Marks. Need fails, however, to allege sufficient facts to support a reasonable inference that Defendants had a bad faith intent to profit from using the Need Marks. Accordingly, Need currently fails to state a claim for a violation of the ACPA.

Need includes the entirety of its allegations that Defendants acted in bad faith in two paragraphs of the Complaint. Need asserts that

> Defendants registered and used the Infringing Domains with the bad faith intent of causing harm to [Need] and its brand and of profiting unlawfully from the Marks by using the Marks to call attention to the Infringing Domains, thereby increasing sales and revenue for Defendants[, and]

> Defendants registered and used the Infringing Domains and the Sites with the intent to confuse consumers and divert them from Need's online location to Defendants' websites accessible through the Infringing Domains, with the bad faith intent to harm Plaintiff's goodwill and to profit from the Marks by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of the Infringing Domains and the Sites.

(Compl. ¶¶ 56–57.) Quite apart from "factual content that allows the court to draw the reasonable inference" that Defendants acted in bad faith, *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556), these statements amount to a "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555.

Need fails to allege facts sufficient to raise the plausible inference that "the conduct at issue is motivated by a bad faith intent to profit." *Falwell*, 420 F.3d at 319–20 (internal citation and quotation marks omitted). It is possible that discovery could alter the claims Need can make

about Defendants' intent. At present, however, Need cannot state a claim for an ACPA violation. The Court will dismiss Count VI, the ACPA Claim, without prejudice.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion for Jurisdictional Discovery and deny without prejudice the Scanlon Motion to Dismiss. The Court will grant in part and deny in part the Joint Motion to Dismiss. An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 3 | 30 | 2018
Richmond, Virginia